## UNITED STATES *v.* HELLARD.

No. 648.   Argued April 28, 1944.—Decided May 15, 1944.

*Mr. Marvin J. Sonosky,* with whom *Solicitor General Fahy, Assistant Attorney General Littell,* and *Messrs. Valentine Brookes* and *Norman MacDonald* were on the brief, for the United States.

*Mr. George H. Jennings* for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question in this case is whether full-blood Indians of the Five Civilized Tribes may be divested of title to restricted land by a sale in partition proceedings to which the United States is not a party.

A full-blood Creek Indian died leaving heirs of the full blood. They inherited certain lands from her, lands which were subject to restrictions on alienation both in her hands and in the hands of the heirs.[1]   By § 2 of the Act of June

---

[1] 35 Stat. 312; 44 Stat. 239; 45 Stat. 495; 47 Stat. 777.   And see *Parker* v. *Richard,* 250 U. S. 235; *Harris* v. *Bell,* 254 U. S. 103; *Stewart* v. *Keyes,* 295 U. S. 403.

14, 1918 (25 U. S. C. § 355, 40 Stat. 606) Congress declared that such lands were "made subject to the laws of the State of Oklahoma, providing for the partition of real estate." [2] By § 3 of the Act of April 12, 1926 (44 Stat. 239) Congress provided for the service upon the Superintendent for the Five Civilized Tribes of a prescribed written notice of the pendency of any suit to which a restricted member of the Tribes in Oklahoma or the restricted heirs or grantees are parties and which involves claims to "lands allotted to a citizen of the Five Civilized Tribes or the proceeds, issues, rents, and profits derived from the same." By that Act the United States is given an opportunity to appear in the cause and is bound by the judgment which is entered.

The heirs instituted partition proceedings in the District Court for Creek County, Oklahoma in March 1940. The United States was not named as a party nor was notice of the suit served on the Superintendent. A judgment of partition was entered, pursuant to which the land was sold and a sheriff's deed in partition issued to respondent. In

---

[2] "That the lands of full-blood members of any of the Five Civilized Tribes are hereby made subject to the laws of the State of Oklahoma, providing for the partition of real estate. Any land allotted in such proceedings to a full-blood Indian, or conveyed to him upon his election to take the same at the appraisement, shall remain subject to all restrictions upon alienation and taxation obtaining prior to such partition. In case of a sale under any decree, or partition, the conveyance thereunder shall operate to relieve the land described of all restrictions of every character."

Sec. 1 of this Act (25 U. S. C. § 375) provides in part: "That a determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the State of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said State for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question."

1941 respondent instituted in the same court the present action against the Indian heirs to quiet his title. Notice was served on the Superintendent. The heirs answered disclaiming any interest. At the instance of the United States the cause was removed to the federal District Court as authorized by § 3 of the Act of April 12, 1926. The United States then answered, alleging that the partition proceedings were void for lack of the United States as a party and for want of service on the Superintendent under § 3 of the Act of April 12, 1926. It prayed that the deed in partition be set aside and title quieted in the heirs. The District Court held that the partition proceedings were valid and quieted title in respondent. The Circuit Court of Appeals affirmed. 138 F. 2d 985. The case is here on a petition for a writ of certiorari which we granted because of the importance in the administration of Indian affairs of the question presented.

It seems clear from the language of the Act of June 14, 1918 and its legislative history (S. Rep. No. 330, 65th Cong., 2d Sess.) that Congress vested in the Oklahoma state courts jurisdiction to determine heirship in these restricted lands (§ 1) and jurisdiction to partition them. § 2. See *Salmon* v. *Johnson,* 78 Okla. 182, 189 P. 537; *United States* v. *Bond,* 108 F. 2d 504. The authority of Congress to select state tribunals to perform such functions is clear. *Parker* v. *Richard,* 250 U. S. 235; *Harris* v. *Bell,* 254 U. S. 103; *Stewart* v. *Keyes,* 295 U. S. 403. But a grant of jurisdiction to a particular court without more does not determine what parties are indispensable to the proceedings in question. Petitioner concedes that the United States is not a necessary party to proceedings to determine heirship under § 1 of the Act of June 14, 1918. Since restrictions on alienation do not prevent inheritance, no governmental interest is at least directly involved in such a determination. It may likewise be inferred from the

language, nature, and purpose of Acts of Congress which vest jurisdiction over specified Indian affairs in a designated court that Congress not only has made that tribunal the exclusive agency to effectuate the federal policy but also has dispensed with any requirement that the United States be a party to the proceedings. See *Hy-Yu-Tse-Mil-Kin* v. *Smith,* 194 U. S. 401, 413–414; *Winton* v. *Amos,* 255 U. S. 373, 392. But we do not think that Congress did more by those provisions of the Act of June 14, 1918 with which we are presently concerned than to grant the Oklahoma state courts jurisdiction over partition proceedings.

Restricted Indian land is property in which the United States has an interest. "This national interest is not to be expressed in terms of property, or to be limited to the assertion of rights incident to the ownership of a reversion or to the holding of a technical title in trust." *Heckman* v. *United States,* 224 U. S. 413, 437. Though the Indian's interest is alienated by judicial decree, the United States may sue to cancel the judgment and set the conveyance aside where it was not a party to the action. *Bowling & Miami Investment Co.* v. *United States,* 233 U. S. 528; *Privett* v. *United States,* 256 U. S. 201; *Sunderland* v. *United States,* 266 U. S. 226. Under § 2 of the Act of June 14, 1918 lands partitioned in kind to full-bloods remain restricted. Only if the land is sold at partition sale are the restrictions removed. The governmental interest throughout the partition proceedings is as clear as it would be if the fee were in the United States. *Minnesota* v. *United States,* 305 U. S. 382, 387–388; *Town of Okemah* v. *United States,* 140 F. 2d 963. The United States as guardian of the Indians is necessarily interested either in obtaining partition in kind where that course conforms to its policy of preserving restricted land for the Indians or in seeing that the best possible price is obtained where a sale is desirable. Where, as here, the lands are both tax-

exempt and restricted, the United States is concerned with the reinvestment of the proceeds in other lands likewise tax-exempt and restricted as provided in the Act of June 30, 1932, 47 Stat. 474, 25 U. S. C. § 409a.[3] The United States is also interested in protecting the preferential right of the Secretary of the Interior to purchase the land at the sale for another Indian, as provided in § 2 of the Act of June 26, 1936, 49 Stat. 1967.[4] These are important governmental interests. Since the power of Congress over Indian affairs is plenary, it may waive or withdraw these duties of guardianship or entrust them to such agency—state or federal—as it chooses. But we do not find any indication that when Congress came to deal with these partition proceedings it substituted the Oklahoma state court for the Secretary of the Interior in the performance of the

---

[3] "That whenever any nontaxable land of a restricted Indian of the Five Civilized Tribes or of any other Indian tribe is sold to any State, county, or municipality for public-improvement purposes, or is acquired, under existing law, by any State, county, or municipality by condemnation or other proceedings for such public purposes, or is sold under existing law to any other person or corporation for other purposes, the money received for said land may, in the discretion and with the approval of the Secretary of the Interior, be reinvested in other lands selected by said Indian, and such land so selected and purchased shall be restricted as to alienation, lease, or incumbrance, and nontaxable in the same quantity and upon the same terms and conditions as the nontaxable lands from which the reinvested funds were derived, and such restrictions shall appear in the conveyance."

[4] "Whenever any restricted Indian land or interests in land, other than sales or leases of oil, gas, or other minerals therein, are offered for sale, pursuant to the terms of this or any other Act of Congress, the Secretary of the Interior shall have a preference right, in his discretion, to purchase the same for or in behalf of any other Indian or Indians of the same or any other tribe, at a fair valuation to be fixed by the appraisement satisfactory to the Indian owner or owners, or if offered for sale at auction said Secretary shall have a preference right, in his discretion, to purchase the same for or in behalf of any other Indian or Indians by meeting the highest bid otherwise offered therefor."

functions which we have enumerated. That alone would not be fatal to respondent's position if it could be inferred that those governmental interests were to be protected by means other than making the United States a party. But, as we have said, the Act in question purports to be no more than a jurisdictional statute. It fails to say that the United States is not a necessary party; nor does it suggest that the United States or its officers are confined to a limited role in the proceedings. Cf. *United States* v. *Candelaria,* 271 U. S. 432, 444. We must read the Act in light of the history of restricted lands. That history shows that the United States has long been considered a necessary party to such proceedings in view of the large governmental interests which are at stake. We will not infer from a mere grant of jurisdiction to a state or federal court to adjudicate claims to restricted lands and to order their sale or other distribution that Congress dispensed with that long-standing requirement. The purpose to effectuate such a major change in policy must be clear.

Much stress is laid on the point that if § 2 of the Act of June 14, 1918 is so construed, it was meaningless until the Act of April 12, 1926 was passed which provided a statutory method for making the United States a party. The argument is that prior to the latter Act there was no way of joining the United States as a party to such an action. But as stated by Mr. Justice Brandeis speaking for the Court in *Minnesota* v. *United States, supra,* p. 388, authorization to bring an action involving restricted lands "confers by implication permission to sue the United States." [5] The suit in that case failed because no jurisdiction was granted to the state courts to condemn the lands in question.[6] But since the state court in the present case was given jurisdiction to partition, consent to be sued in the

[5] And see *United States* v. *Jones,* 109 U. S. 513, 519–521.

[6] See Cohen, Handbook of Federal Indian Law (1942), p. 381.

state court may be implied. Service of process therefore might be had in the usual way (see *Town of Okemah* v. *United States, supra,* p. 966) even in absence of the 1926 Act.

*Reversed.*