**GERARD et al. v. SHERBURNE et al.**

No. 698.

District Court, D. Montana, Great Falls Division.

Feb. 8, 1947.

S. J. Rigney, of Cut Bank, Mont., for plaintiffs.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., for the United States.

Lloyd A. Murrills, of Cut Bank, Mont., for J. L. and Eula Sherburne.

H. C. Hall, of Great Falls, Mont., for W. H. Mercer et al.

Louis P. Donovan, of Shelby, Mont., for Fred Shupe et al.

Wilbur P. Werner, of Cut Bank, Mont., for Guy McConaha et al.

PRAY, District Judge.

The above-entitled cause, pending on motions to dismiss by the several defendants, is substantially the same case that was before the court on motions of defendants to dismiss over a year ago, with the exceptions that the United States is here added as a party defendant and some of the parties named in the first case as complainants have been omitted. No. 525, Gerard v. Mercer et al., D.C., 62 F.Supp. 28. Six motions to dismiss on the part of defendants have now been submitted to the court for consideration, and most of the objections to the complaint in the first case have been re-asserted. Motions to dismiss in the first case were granted, and no appeal taken, otherwise the several objections raised to the complaint in this case might have been disposed of, and duplication of effort avoided. Counsel for complainants claim authority under Title 25 U.S.C.A. § 345, for making the United States a party defendant in this case.

In the other case (Gerard et al. v. Mercer et al., supra, and hereinafter referred

to as the first case) the court dwelt at considerable length on the question of whether the United States should be regarded as an indispensable party to the action, without deciding in what manner the United States could be brought into the action as a party, but that its presence was indispensable. Under some of the authorities there cited it would seem possible that such a result might be attained by making the United States a party defendant as in the present action; but such a course is seriously challenged by counsel for the defendants, and authorities have been presented, some allegedly in favor of and others against, the right of the complainants to proceed in this manner. Counsel for complainants strongly rely upon Arenas v. United States, 322 U.S. 419, 429, 64 S.Ct. 1090, 88 L.Ed. 1363, as a precedent in point and favorable to their contention. That the above decision is based upon an entirely different state of facts would seem clear from a comparison. In the Arenas case the statute cited as a basis for the decision (25 U.S.C.A. § 345) was directly in point, and applied specifically to the principal fact in question which was the withholding from the Indian plaintiff of his allotment, to which he seemed rightfully entitled, and which was shown to be long overdue.

In the first case the court held that the United States was an indispensable party to the action, and is now of the same opinion. In this action the United States Attorney has moved for a dismissal on the ground that the United States can not be sued therein without its consent, and that such consent has not been given, and counsel further contend that such act is without legal effect, and that no statute or authority exists authorizing it. Great stress has been laid upon the decision in the United States v. Eastman, 9 Cir., 118 F.2d 421, 423, certiorari denied 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 510, in which the Circuit Court of Appeals for this Circuit in an opinion by Judge Healy held that the statute there in question (Title 25 U.S.C.A. § 345) was intended only to compel the making of an allotment in the first instance, and the language used is: "The trial court thought that leave to sue the United States is found in the act of August 15, 1894, as amended, 25 U.S.C.A. § 345. We are not able to agree. It is plain from the whole statute that Congress intended merely to authorize suits to compel the making of allotments in the first instance. Here the allotments have already been made. Should the view taken below be approved and the scope of the statute thus enlarged by judicial construction the government may find itself plagued with suits of Indians dissatisfied with the administration of their individual holdings. Enlargement of the right to sue the government for the redress of grievances of this character is solely a function of Congress. The suit as against the United States should have been dismissed."

In that case the Indian allottees claimed to have the right to sell timber on their allotments without restriction or charge, and that regulations of the Secretary of the Interior were without legal force. The Indians made the United States a party and sought to enjoin the enforcement of these regulations. The material parts of the statute above cited are set forth so that the full force and meaning of its terms may be considered; it is labeled: "Actions for allotments," and states that all persons described therein who are entitled to an allotment of land under any law of Congress, or "who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to any allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him * * *."

The last sentence above quoted, as well as other parts of the Act, would clearly indicate that the sole purpose of this statute is to authorize the Indian to bring a suit against the United States to require the Secretary to make an allotment of land to him, which he may assert has been denied to him or from which he has been excluded, and to which he claims to be lawfully entitled by virtue of some Act of Congress. It was said in United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894: "* * * It has heretofore been shown that the suability of the United States and the Indian Nations, whether directly or by cross-action, depends upon affirmative statutory authority. Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void. The failure of officials to seek review cannot give force to this exercise of judicial power. Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdiction exclusive by declaration of the legislative body."

The purpose of the present action is to quiet title and set aside and annul patents in fee which were issued by the United States, under authority of an Act of Congress, to the complainants about twenty-seven years ago, and which they now assert were issued to them without their application or consent. The court is unable to understand how the language of the above statute can be so construed as to authorize the complainants to sue the United States in the present action without consent in the first instance, or how an action can be maintained unless by intervention or by an action voluntarily instituted by the United States as plaintiff against the above-named defendants. That the United States is an indispensable party seems to have been demonstrated by citation of authorities in the first case, but it does not clearly appear therefrom how the presence of the United States as a party to such an action is to be accomplished. In speaking of the obligation of the Government to act promptly in protecting the rights of the Indian, the court held in Mahnomen County v. United States, 8 Cir., 131 F.2d 936, 938,

939, that "* * * in the strict and diligent performance of its trust, the United States should have applied to its courts for decree or decrees avoiding the apparent lien of taxes illegally assessed * * * but time does not run against the sovereign and its right to resort to its courts in aid of the performance of governmental obligation is not restricted to any particular form of action * * *."

Counsel for complainants state that if the court does not find authority to sue the United States in Title 25 U.S.C.A. § 345 as interpreted by the Supreme Court· in Arenas v. United States, supra, then such authority will be found by implication in United States v. Hellard, 322 U.S. 363, 368, 64 S.Ct. 985, 988, 88 L.Ed. 1326, wherein the court said: "But as stated by Mr. Justice Brandeis speaking for the Court in Minnesota v. United States, supra, 305 U.S. at page 388, 59 S.Ct. at page 295, 83 L.Ed. 235, authorization to bring an action involving restricted lands 'confers by implication permission to sue the United States.' "

The question in the Hellard case was whether full-blood Indians of the Five-Civilized Tribes could be divested of title to restricted land by a sale in partition proceedings to which the United States was not a party: "A full-blood Creek Indian died leaving heirs of the full blood. They inherited certain lands from her, lands which were subject to restrictions on alienation both in her hands and in the hands of the heirs. By § 2 of the Act of June 14, 1918, 25 U.S.C. § 355, 25 U.S.C.A. § 355, 40 Stat. 606, Congress declared that such lands were 'made subject to the laws of the state of Oklahoma, providing for the partition of real estate.' " By Section 3 of the Act of April 12, 1926, 44 Stat. 239, Congress provided for the service upon the superintendent for the Five Civilized Tribes of a prescribed written notice of the pendency of any suit to which a restricted member of the Tribes in Oklahoma or the restricted heirs of grantees are parties and which involves claims to "lands allotted to a citizen of the Five Civilized Tribes or the proceeds, issues, rents, and profits derived from the same." By that Act the United States is given an opportunity to appear in

the cause and is bound by the judgment which is entered. Here the statute provides that the United States may appear in the case and a prescribed written notice must be served upon the superintendent. This action was begun in the state court as authorized but no notice was given the superintendent and the United States was not made a party. This was restricted Indian land at the time of suit in which the United States had a direct interest; the court said that the governmental interest throughout the partition proceedings is as clear as it would be if the fee were in the United States. The Government is necessarily interested in partition proceedings affecting restricted land where such course is desirable, and in seeing that the best possible price is obtained on a sale, and in re-investment of the proceeds, and is further interested in protecting the preferential right of the Secretary of the Interior to purchase the land at a sale for another Indian, as provided in Sec. 2 of the Act of June 26, 1936, 49 Stat. 1967, 25 U.S.C.A. § 502. With such an involvement of restricted Indian lands it is not difficult to understand why Mr. Justice Douglas in the Hellard case referred to Minnesota v. United States, supra, as affording an illustration of a similar complication in respect to restricted Indian lands, wherein it was suggested that such an involvement of restricted Indian lands would "confers by implication permission to sue the United States." But that case is so entirely different from the case now under consideration that by comparison of the facts and questions presented the actions appear to be clearly distinguishable.

Here the complainants are trying to set aside and annul a patent in fee issued to them many years ago, under authorization by Congress, on the belated claim that they never applied for or consented to the issuance of such a patent. It does not appear that permission to sue the United States has been conferred by implication in this action. If in this case the United States is not properly before the court as a defendant, which the court has plainly indicated, then this case, like the first case, constitutes a collateral attack on the patent in fee which this court there held could not be sustained.

The further objection of counsel for defendants that no allegation is contained in the complaint bringing complainants within the provisions of Sections 352a and 352b, Title 25 U.S.C.A., is sustained in this case as it was in the first.

A further discussion of the questions presented here and in the first case would seem unnecessary to reach a decision on the disposal of the motions to dismiss, and would only unduly extend the argument. In view of the attitude of the court in both cases and decision made on pertinent objections raised to the complaint, in the opinion of the court, the proper order at this time would be one of dismissal, affording the parties an opportunity for appeal and for final settlement of the questions that are impeding progress in this litigation, and such is the order of the court herein.