**GERARD et al. v. UNITED STATES et al.**
No. 11591.

Circuit Court of Appeals, Ninth Circuit.
April 15, 1948.

Rehearing Denied June 1, 1948.

S. J. Rigney, of Cut Bank, Mont., for appellants.

Wilbur P. Werner, of Cut Bank, Mont., and Louis P. Donovan, of Shelby, Mont., for appellees Shupe and McCanaha.

H. C. Hall and C. Alexander, both of Great Falls, Mont., for appellees Frary and Mercer.

Murrills & Frisbee, of Cut Bank, Mont., for appellees Sherburne.

A. DeVitt Vanech, Asst. Atty. Gen., Roger P. Marquis, of Washington, D. C., and John B. Tansil, U. S. Atty., of Billings, Mont., for appellee U. S. A.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment dismissing the complaint of two Blackfeet Indians seeking to establish title to land held by them under trust patents issued to them on land previously allotted to them. The dismissal was on the ground that the United States is a necessary party and that its wards have no power so to join it.

The complaint alleges the land covered by the trust patent is in the Blackfeet Indian Reservation. The plaintiffs are members of that tribe and the trust patent was made under the Treaty of 1887, 25 Stat. 113, with that tribe and the Allotment Act of February 8, 1887, 24 Stat. 388. These trust patents contained the provision that the land described as held by the United States "for the period of twenty-five years, in trust for the sole use and benefit of the said Indian and at the expiration of said period the United States will convey the same by patent to said Indian in fee, discharged of said trust and free from all charge and encumbrance whatsoever."

The date of the trust patent is February 28, 1918. The complaint further alleges that less than four months later, on June 11, 1918, without the Indians' application or consent, an unrestricted fee patent was issued to them. Instead, they accepted the second deed only because of the representations of the officials of the Indian Bureau of the United States in Washington, D. C., and the Indian Agency at Browning, Montana, to the effect that the patent in fee must be accepted and that the lands must be rendered subject to taxation by the taxing authorties under the laws of the State of Montana.

After the unrestricted patent of June 11, 1918, was issued, Glacier County, Montana, purported to levy upon and assess taxes on these lands and later purported to sell them for delinquent taxes to one McDonald, and now the several defendant appellees other than the United States claim an interest therein. The relief sought by the complaint is:

(1) That the defendants and each of them be adjudged to have no right, title or interest in and to the real property described in this complaint or any lien, claim or demand whatsoever against the same or any part thereof, save and except that any interest the United States may claim as guardian of the complainants.

(2) That the fee patents, issued to the complainants on or about June 11, 1918, to be held and determined to have been issued without the application or consent of the complainants, or either of them, and that any right, claim or interest claimed by any of the defendants, except the United States, be determined to have been without any right and null and void for all purposes.

(3) That the complainants be declared to be the owners of the respective tracts claimed by each of said complainants and to have the right of immediate possession, subject to such right as the United States may have as guardian of the complainants.

(4) That the lands be adjudged to be inalienable, and immune from taxation during the period of restriction on alienation provided by law.

These Blackfeet Indians are wards of the United States, as were the Creek Indian plaintiffs in Board of Commissioners v. Seber, 318 U.S. 705, at page 715, 63 S.Ct. 920, 926, at page 925, 87 L.Ed. 1094, of whom the court said:

"In the exercise of the war and treaty powers, the United States overcame the Indians and took possession of their lands, sometimes by force, leaving them an uneducated, helpless and dependent people needing protection against the selfishness of others and their own improvidence. Of necessity the United States assumed the duty of furnishing that protection and with it the authority to do all that was required to perform that obligation and to prepare the Indians to take their place as independent, qualified members of the modern body politic. This was classically summarized in United States v. Kagama, 118 U.S. 375, 384, 385, 6 S.Ct. 1109, 1114, 30 L.Ed. 228:

" 'From their [the Indians'] very weakness and helplessness, so largely due to the course of dealing of the federal government with them, and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the executive and by congress, and by this court, whenever the question has arisen. * * *

" 'The power of the general government over these remnants of a race once powerful, now weak and diminished in numbers, is necessary to their protection, * * *. It must exist in that government, because it never has existed anywhere else; because the theater of its exercise is within the geographical limits of the United States; because it has never been denied; and because it alone can enforce its laws on all the tribes.' "

The right of the Indian ward to sue in the United States District Court in a suit respecting his rights under a patent in which the United States is his trustee, is conferred by the Act of February 6, 1901, 25 U.S.C.A. §§ 345, 346. We think this is clear from the statutory provisions, and that it is unnecessary to invoke the rule of liberal construction stated in Alaska Pacific Fisheries v. United States, 248 U.S. 78, 89,

39 S.Ct. 40, 42, 63 L.Ed. 138: "This conclusion has support in the general rule that statutes passed for the benefit of dependent Indian tribes or communities are to be liberally construed, doubtful expressions being resolved in favor of the Indians. Choate v. Trapp, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941, and cases cited."

The Act of 1901[1] has provisions giving jurisdiction in personam over Indian wards in the circuit (now district) courts in two classes of cases. They are provisions (a), where an Indian is seeking to establish his "right * * * to any allotment" and provisions (b), where he is seeking to protect his interest in "land" to which he is entitled "under any grant made by Congress." In the instant case there is no question of the appellants' right to their allotments. Here are Indians already allotted land to which a trust patent has been issued under the Congressional statute providing for the grant of such lands in trust, 24 Stats. 388.

The Act of 1901 further has provided for suits by the Indians where the Indian wards are "excluded from * * * any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress." As to litigation concerning the two classes, claims to allotments to be made and to land already allotted and held under trust patents, the Act's provisions are that the Indians "may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper circuit court of the United States." 31 Stat. 760, 25 U.S.C.A. § 345.

The distinction between the provisions of the 1901 Act for suits concerning an Indian's right to an allotment in the first instance and the provisions for suits where the trust patent has been issued is recognized in several cases. Typical were cases bought by Indians to determine who are heirs to land already allotted to an Indian ancestor to whom a trust patent is issued. McKay v. Kalyton, 204 U.S. 458, 27 S.Ct. 346, 51 L.Ed. 566; Heckman v. United States, 224 U.S. 413, 414, 32 S.Ct. 424, 56 L.Ed. 820.

This particular jurisdiction respecting heirship to lands already allotted was taken from the federal courts by the Act of June 25, 1910, 36 Stat. 855,[2] and restored to the Secretary of the Interior. The Supreme Court states in a case where the issue was as to the heirs of already allotted land that the Act of 1910 *"restored to the Secretary the power* [in heirship cases] *that had been taken from him by acts of 1894 and February 6, 1901, c. 217, 31 Stat. 760.* * * * It made his jurisdiction exclusive in terms, it made no exception for pending litigation, but purported to be universal, and *so to take away the jurisdiction that for a time had been conferred upon the courts of the United States."* (Emphasis

---

[1] "That all persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper circuit court of the United States; and said circuit courts are hereby given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judg-

ment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands now held by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: Provided, That the right of appeal shall be allowed to either party as in other cases."

[2] "That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive."

supplied) Hallowell v. Commons, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409. This court had previously so held in Parr v. Colfax, 9 Cir., 197 F. 302.

That is to say, the Act of 1901 gave jurisdiction to the district courts in matters other than those where allotments were sought in the first instance.

In Henrietta First Moon v. Starling White Tail, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565, an heirship case, it was claimed that an Act of 1911, 28 U.S.C.A. § 41(24), restored such cases to the federal courts. That act provides that the district courts have jurisdiction "of all actions, suits, or proceedings involving the *right* of any person, in whole or in part of Indian blood or descent, *to* any allotment of land under any law or treaty." (Emphasis supplied)

The Supreme Court cites the Hallowell case, stating that such heirship jurisdiction had existed prior to the Act of 1910, but held, 36 S.Ct. at pages 244, 245, that the Act of 1911 did not restore the jurisdiction since that act, quoting its above provisions, concerned only the jurisdiction of the cases where an original allotment was sought and not to lands already allotted over which there is an heirship dispute.

■ That is to say, the Act of 1911 did not affect the jurisdiction conferred by the Act of 1901 in so far as it concerns suits where the trust patent was issued and the question was one of protection of an unquestioned allotment. All that had been done to the Act of 1901 was the withdrawal of heirship suits by the Act of 1910. The language of the statutes clearly provides the jurisdiction here claimed. There is not the doubt invoking the obligation to construe them favorably to the Indians.

On the question of the right in the instant suit to join the United States as a party, in the recent decision of the United States v. Hellard, 322 U.S. 363, at page 368, 64 S.Ct. 985, at page 988, 88 L.Ed. 1326, a suit brought by an Indian having a re-stricted trust patent, the court stated that "authorization to bring an action involving restricted lands 'confers by implication permission to sue the United States.'" [3]

■ This statement of the law has particular applicability here. The statutory right to sue to protect their interest in the trust lands is broad enough to include the United States. Here the complaint states the United States, without the Indians' consent, has issued an unrestricted fee patent, which, if valid, would destroy his claims based on his prior trust patent. If it be invalid, as we have held in United States v. Nez Perce County, Idaho, 95 F.2d 232, 235, 236, the United States would be confirmed in its guardianship of the trust lands, a matter of particular interest to it, this, inter alia, because if the Indian trust patentees die without heirs, the land escheats to the tribe and becomes subject to administration by the United States, 56 Stat. 1021, 25 U.S.C.A. § 373a.

■ We hold the Indians are entitled to join the United States as a party, to justify the issue of the second patent so affecting the first, and for the determination whether it is the guardian of an Indian trust estate. United States v. Hellard, supra.

However, the Act of 1901, as in the legislation in the Hellard case, requires a service on the United States. Section 2 of that act provides:

"That the plaintiff shall cause a copy of his petition filed under the preceding section to be served upon the district attorney of the United States in the district wherein suit is brought, and shall mail a copy of same, by registered letter, to the Attorney General of the United States, and shall thereupon cause to be filed with the clerk of the court wherein suit is instituted an affidavit of such service and the mailing of such letter."

The judgment of the district court is reversed and the cause remanded with the

---

[3] Two years before the Hellard decision, this court held in United States v. Eastman, 9 Cir., 118 F.2d 421, that the Indians having a restricted trust patent could sue the subordinate officials of the Indian Bureau regarding their administration of their trust lands. We disposed of the case on the merits but dismissed it as to the United States. Under the Hellard case, considered with the White Moon case, supra, what we said in the Eastman case in connection with dismissing the United States is not controlling here.

right in the plaintiffs appellants to make the service provided in Section 2 of the Act of February 6, 1901.

Reversed.