*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ASA'CARSARMIUT TRIBAL COUNCIL, | ) ) ) | Supreme Court No. S-15318 |
| Appellant, | ) ) | Superior Court No. 3AN-12-04581 CI |
| v. | ) ) | O P I N I O N |
| JOHN D. WHEELER III, | ) ) | No. 6967 – November 21, 2014 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Samuel J. Fortier, Fortier & Mikko, P.C., Anchorage, for Appellant. Carl D. Cook and Whitney-Marie K. Bostick, Law Office of Carl D. Cook, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I. INTRODUCTION

J.W. is the son of Jeanette Myre, a member of the Asa'carsarmiut Tribe, and John Wheeler, a non-member. In 2007 Myre petitioned the Asa'carsarmiut Tribal Court to assume jurisdiction over the custody of J.W. After a hearing in which both parents participated, the tribal court awarded Myre primary physical custody and granted

Wheeler limited visitation rights. In 2011 Wheeler kept J.W. at the end of a visitation period, alleging that he was concerned about J.W.'s safety if he were returned to Myre's custody. Wheeler also initiated custody proceedings in state superior court. Myre moved to enforce the 2007 tribal court custody order; the superior court found it to be a lawful custody order and returned J.W. to Myre's custody.

In 2012 Myre was arrested for child endangerment, and the State of Alaska assumed protective custody of J.W. Wheeler moved for modification of the custody order in the superior court. The Asa'carsarmiut Tribal Council intervened in the superior court proceeding to argue that the superior court lacked jurisdiction to modify the tribal court custody order. The superior court concluded it had modification jurisdiction and determined there had been substantially changed circumstances such that modification was in J.W.'s best interests.

The superior court awarded Wheeler primary physical custody. Neither Wheeler nor Myre has appealed the superior court's decision, but the tribal council appeals, arguing that the superior court lacked modification jurisdiction. The narrow question before us in this appeal is thus whether the tribal council has standing to appeal the superior court's modification decision in light of the parents' election not to appeal that decision. We conclude that under this circumstance, the tribal council does not have standing, and we therefore dismiss the appeal.

## II.    FACTS AND PROCEEDINGS

### A.    Background And Tribal Court Proceedings

J.W. was born in 2005 to John D. Wheeler III and Jeanette Myre. Myre is a member of the Asa'carsarmiut Tribe, a federally recognized tribe,[1] and J.W. is eligible

---

[1]    Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 78 Fed. Reg. 26,384, 26,388 (May 6, 2013) (continued...)

for tribal membership. Wheeler is not a tribal member and resides in Washington.

In December 2007 Myre successfully petitioned the Asa'carsarmiut Tribal Court to assume jurisdiction over the custody of J.W. The tribal court held a custody hearing that month, in which both Myre and Wheeler participated. The tribal court awarded primary physical and sole legal custody to Myre, emphasizing the importance of fostering J.W.'s awareness of his Asa'carsarmiut cultural heritage and identity. Wheeler was granted limited visitation rights. In its order, the tribal court noted that it would "retain jurisdiction over the custody of [J.W.]"

In 2008 Wheeler petitioned the tribal court to modify the child support order and to request additional visitation with J.W. The tribal court declined to modify the order and denied the request for additional visitation. Wheeler also petitioned in 2009 asking the tribal court to reopen the custody case on the ground that J.W. was old enough to travel between Alaska and Washington. There is no evidence in the record that the tribal court responded to this petition.

In December 2011 J.W. traveled to Washington to spend Christmas with Wheeler. J.W. was scheduled to return to Alaska on December 30, but Wheeler kept J.W. in Washington. On December 30 Wheeler emailed Jerald Reichlin, the lawyer for the tribal court, informing him that he believed that there had been "a dramatic change in circumstances" that impacted J.W.'s welfare. Specifically, Wheeler informed Reichlin that he had been unable to contact Myre and that he believed that she was in hiding from the father of her other two children, George Johnson. In his email, Wheeler wrote: "I respectfully request a hearing before the Asa'Car[s]a[r]m[iu]t Tribal Council, seeking 'full custody' of my son." Two days later, Wheeler further informed Reichlin that Myre

---

[1](...continued)
(current list of federally recognized tribes).

had been on a "binge, blackout style, drunk" and that Johnson had made death threats to her; he indicated that he had spoken with Myre and that she had "agreed that [J.W.] was safer and in better care down here in Washington with [Wheeler]." On January 3, 2012, Reichlin responded to Wheeler:

> I have received your correspondence and your notes and I shall forward them to the Tribe. There is nothing before the Tribal Court at this moment. [J.W.'s] travel arrangements were between you and Jeanette. The Tribal Court is not involved in changes of travel plans. If you wish to file a motion to alter custody orders, you are free to do so. I believe that you know the process; you will need to make your request in writing and support it with information you want the court to consider. . . . Also, you should be aware that you and Jeanette have latitude to alter your arrangements. If the parties are in accord, unless there is some obvious harm to [J.W.], the Tribal Court will not ordinarily get involved in voluntary changes to established visitation or custody schedules.

It does not appear from the record that Wheeler had further correspondence with Reichlin or the tribal court.

In a later affidavit, Myre stated that in early January 2012 she contacted the tribal court for assistance in regaining custody of J.W. She reported that the tribal court did not call her back for several days and that the tribal court administrator then told her that the tribal court was unable to help her. Myre stated that another tribal court administrator later agreed to contact Wheeler, but that the tribal administrator told Myre that she had not received a response from Wheeler.

**B.  Superior Court Proceedings**

On January 11, 2012, Wheeler filed a complaint for custody in superior court in Anchorage. His initial complaint did not disclose the prior tribal court proceedings or custody order. The jurisdiction affidavit indicated that Myre and J.W.

had resided in Anchorage for the previous seven months, from June 2011 to December 2011. On February 8 Wheeler filed a petition for a domestic violence protection order in which he disclosed the existence of the tribal court child custody order.

Myre responded to Wheeler's custody complaint on February 10 by filing a motion to compel the return of J.W. and seeking a domestic violence protective order on the basis of custodial interference. She also petitioned the superior court to register the tribal court child custody order and to enforce it on an expedited basis under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Myre indicated that "she will likely seek [a] corresponding modification of the tribal court order to reflect the need to limit and supervise Mr. Wheeler's future visitation and contact with [J.W.]" There is no evidence in the record of any attempt by Myre to modify the custody order in tribal court.

In her motion for expedited consideration, Myre included a footnote regarding tribal court jurisdiction:

> Defendant would emphasize that her filing of this Petition is not and should not be construed as her express or implicit waiver of the tribal court's having exclusive and continuing jurisdiction over the parties or the subject matter of [J.W.'s] custody. Therefore, while Plaintiff has filed this case with the implied (but not expressed in his Complaint) assertion that the Alaska state court has jurisdiction regarding custody issues, Defendant vigorously maintains that this court does not have subject matter jurisdiction to modify the custody order issued by the tribal court that is currently in place, and that jurisdiction lies only in the Alaska court's recognition and enforcement of that order.

The superior court denied Myre's petition to register the tribal court custody order, concluding that "the Alaska legislature declined to include tribal court custody

orders within the scope of those orders that may be registered and enforced under [the UCCJEA]" and therefore "the statute must be interpreted as being limited to enforcement of state court child-custody determinations." The superior court noted that Washington had included tribal court custody orders when it adopted the UCCJEA and that "Myre should be successful in registering the custody order in the specific county of Washington where [J.W.] is located, and thereby secure its enforcement by the superior court of that county." The superior court "directed [Myre] to pursue enforcement of the order in the state of Washington," but it does not appear from the record that Myre pursued any action in Washington.

The superior court held a domestic violence protection order hearing in February 2012 and issued supplemental findings discussing the tribal court custody order. Specifically, the superior court found that "Mr. Wheeler's retention of [J.W.] contravenes the established, lawful tribal court custody order as Ms. Myre is the lawful custodian." The superior court therefore concluded that Wheeler had committed the crime of custodial interference; the superior court granted Myre's petition for a long-term domestic violence protection order against Wheeler and returned J.W. to Myre's custody.

In October 2012 the State of Alaska assumed custody of J.W. and initiated a Child In Need of Aid (CINA) proceeding against Myre following an incident during which a vehicle driven by George Johnson with Myre, J.W., and her two other children as passengers was stopped by police officers. Myre was arrested and charged with endangering the welfare of the children as a result of being impaired by intoxication. Johnson was arrested and charged with driving under the influence and child endangerment. Wheeler filed a motion in the superior court for immediate modification of custody. In her response to this motion, Myre "recognize[d] entirely the appropriateness under the circumstances of modifying the *interim* custody arrangement in this matter so that [J.W.] [could] be suitably placed in a home that is best for him, and

also under[stood] that such placement [would] likely be with his biological father." (Emphasis in original.) But the superior court denied Wheeler's motion and stayed the custody action pending developments in the CINA proceeding.

The superior court scheduled a trial on the custody matter for early April 2013. The week before trial, the Asa'carsarmiut Tribal Council[2] filed a motion to intervene, arguing that the superior court should either refer the custody dispute to the tribal court or dismiss the action on the basis of the tribal court's retained jurisdiction over the matter. Wheeler opposed the tribal council's intervention, arguing that the motion was untimely and that the tribal council lacked a sufficient interest in the subject matter of the dispute. Myre filed a non-opposition to the tribal council's motion, agreeing with the tribal council that "[d]ismissal is warranted, because as the court of original jurisdiction, the [tribal court] is the proper forum to address and decide any application by either party for a modification of its previously issued and still-in-effect [child custody order]."

The superior court concluded that the tribal council did not meet the requirements of intervention as a matter of right and that the intervention "is being made extremely late in this proceeding and at least a year after the Council knew or should have known not only that the case existed but that its 2007 custody order would not be registered." The superior court also made clear its determination that the superior court proceedings were "in no way in derogation of the 2007 [tribal court] order or the Council's jurisdiction," and were "not designed to set aside or invalidate the 2007 order." Rather, the superior court concluded that Wheeler was "seeking to *modify* the earlier custody decision in light of substantial changes in circumstances of the parties that have

---

[2]     In its appellant's brief, the tribal council indicates that it is the governing body of the Asa'carsarmiut Tribe of Mountain Village and that the tribal court is the judicial arm of the Asa'carsarmiut Tribe.

occurred over the years since the Council's order was issued" (emphasis in original) and that the superior court had concurrent jurisdiction with the tribal court to modify the child custody order. Nevertheless, the superior court granted permissive intervention to the tribal council for the "limited purpose of defending its jurisdiction and preserving the issue for appeal." The tribal council did not otherwise participate in the custody trial.

At trial the superior court considered the testimony of several witnesses, including Wheeler and Myre, as well as a custody investigator's report. In its findings of fact and conclusions of law, issued in early May 2013, the superior court held that it had "personal and subject matter jurisdiction over the parties, the minor child, and the custody issues in this matter" and that it was "in the best interest of the minor child that [Wheeler] be awarded primary physical and sole legal custody with [Myre] receiving visitation" on the condition that she maintain her sobriety. The superior court also made findings relevant to the issue of changed circumstances since the February 2012 hearing (when the superior court found Wheeler had committed custodial interference in violation of the tribal court child custody order). The superior court found that "there have been at least two relapses of alcohol abuse since then by [Myre], both of which involved conduct endangering the safety of the child," and that "there was a strong factual basis for [Wheeler's] concern when he declined to return the child" in December 2011. The superior court noted that it was "particularly troubled" by the response of state agencies to Myre's behavior, which "placed [J.W.] at risk," and that "[t]he [c]ourt [was] not going to gamble with [J.W.'s] safety again." The superior court adopted the custody investigator's analysis and conclusions and entered a final custody decree awarding Wheeler sole legal custody and primary physical custody. Myre was granted visitation rights.

Myre requested that the superior court stay and reconsider its final custody decree and findings of fact and conclusions of law. The superior court declined to stay

enforcement of the decree but provided both Wheeler and the tribal council with an opportunity to respond to Myre's reconsideration motion and her objections to the court's findings and conclusions. Both Wheeler and the tribal council submitted additional briefing, and because the record does not reflect any ruling on reconsideration by the superior court within 30 days of the responsive briefing, Myre's motion was deemed denied.[3]

Neither Myre nor Wheeler appealed the superior court's custody modification decree, but the tribal council filed an appeal to this court in September 2013. Wheeler opposes the tribal council's appeal on standing grounds.

## III.   STANDARD OF REVIEW

"Issues of standing are questions of law that we review de novo."[4] "In reviewing a superior court's comity determination . . . we apply our independent judgment."[5] In applying de novo review and "exercising our independent judgment, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

---

[3]     Alaska R. Civ. P. 77(k)(4) provides: "The motion for reconsideration shall be decided by the court without oral argument. If the motion for reconsideration has not been ruled upon by the court within 30 days . . . of the date of filing of a response requested by the court . . . the motion shall be taken as denied."

[4]     *Friends of Willow Lake, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 546 (Alaska 2012).

[5]     *John v. Baker* (*John II*), 30 P.3d 68, 71 (Alaska 2001).

[6]     *John v. Baker* (*John I*), 982 P.2d 738, 744 (Alaska 1999).

## IV.  DISCUSSION

### A.  The Tribal Council Lacks Standing To Bring This Appeal.

This case presents an unusual procedural posture in that neither of the parties who actually contested custody in the superior court has appealed the superior court's custody order.  Instead, the tribal council, which was granted permissive intervention by the superior court for the "limited purpose of defending its jurisdiction and preserving the issue for appeal," brings this appeal to "vindicate its retained sovereignty."

Wheeler has consistently opposed the tribal council's involvement in this case and now challenges the tribal council's standing to appeal the superior court's custody order, arguing that the tribal council lacks a cognizable injury-in-fact.  The tribal council responds (1) that Wheeler did not raise the issue of the tribal council's standing in the superior court and therefore this court should not consider it on appeal; and (2) that this court's precedent requires only an "identifiable trifle" for a party to have "standing to fight out a question of principle,"[7] and the tribal council's sovereign interest and injury are sufficient under this standard.  We conclude that the tribal council's interest in ensuring recognition of its tribal court's custody orders is not sufficient to establish standing to bring this appeal of a child custody determination when neither parent has chosen to appeal the superior court's decision.

---

[7] *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1041 (Alaska 2004) (quoting *Trustees for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987)).

### 1.  Wheeler preserved his standing argument.

"As a general rule, we will not consider arguments first raised on appeal."[8] But we have recognized an exception to this general rule: "We will consider arguments not raised explicitly in the [trial court] if the issue is '1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings.' "[9]

In his opposition to the tribal council's motion to intervene, Wheeler contested the tribal council's intervention under both Alaska Civil Rule 24(a)[10] and (b).[11]

---

[8]  *Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 266 (Alaska 2009).

[9]  *McConnell v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 991 P.2d 178, 183 (Alaska 1999) (quoting *State, Dep't of Revenue v. Gazaway*, 793 P.2d 1025, 1027 (Alaska 1990)).

[10]  Alaska R. Civ. P. 24(a) on intervention of right provides:

> Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

[11]  Alaska R. Civ. P. 24(b) on permissive intervention provides:

> Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or

(continued...)

While Wheeler did not explicitly contest the standing of the tribal council in his opposition, he did argue (1) that the tribal council lacked sufficient "interest in the subject matter of the action" because "[t]he subject matter of these proceedings is not the integrity of the tribal court or its orders but the issue of custody in the best interests of the minor child"; and (2) that "the tribal council's interests in [its] 'inherent sovereignty' and comity of [its] orders . . . are not impaired by these proceedings."

Wheeler's argument against the tribal council's standing on appeal certainly could have been predicted from his opposition to its intervention. We have recognized that arguments about the sufficiency of an interest to intervene under Rule 24(a) are also relevant to the sufficiency of an interest to establish interest-injury standing.[12] Therefore, we conclude that Wheeler's arguments against the tribal council's intervention are related closely enough to his standing argument that we will consider the issue of the tribal council's standing.

---

[11](...continued)
> made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

[12]     *See Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 915 (Alaska 2000) ("Under the interest-injury approach a party must have an interest which is adversely affected by the complained-of conduct. The degree of injury need not be great . . . .  This threshold is lower than the interest needed to satisfy Rule 24(a) where the interest must be 'direct, substantial, and significantly protectable.'  Because we held above that [the members of an association] have a sufficient interest to satisfy Alaska Civil Rule 24(a), they necessarily also satisfy that element of the associational standing requirement." (citations omitted)).

**2.	The tribal council fails to establish interest-injury standing to bring this appeal.**

"Standing is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[13]  There are several types of standing, but the tribal council makes clear in its brief that it "relies on interest-injury standing."  "To establish interest-injury standing plaintiffs must demonstrate that they have a sufficient personal stake in the outcome of the controversy and an interest which is adversely affected by the complained-of conduct."[14]

**a.	Characterization of the tribal council's interest and injury**

In its limited appearance at the superior court's custody trial, the tribal council stated that its concern was with "the dignity of the tribal court and the tribal court's orders" and that it did not intend to present evidence or otherwise participate in determining the best interests of J.W. or the appropriate custody arrangement.  On appeal the tribal council similarly characterizes its interest as "vindicat[ion of] its retained sovereignty."

It is far from self-evident that the governing body of a sovereign entity, such as the tribal council, has standing to bring an appeal of a child custody determination when the parents themselves do not appeal and are apparently satisfied with the trial court's decision.  The Indian Child Welfare Act (ICWA) provides for the right of tribal intervention in state court proceedings governed by the act.[15]  But ICWA

---

[13]	*Keller v. French*, 205 P.3d 299, 302 (Alaska 2009) (internal quotation marks and citations omitted).

[14]	*Id.* at 304 (internal quotation marks and citations omitted).

[15]	25 U.S.C. § 1911 (2012) provides that "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the
(continued...)

-13-	**6967**

does not apply to custody disputes between parents.[16] The tribal council does not point to any case from any jurisdiction in which a tribe has intervened in an inter-parental custody dispute and appealed the custody decision even though neither of the parents appealed. Nor does the tribal council cite to any analogous cases in which a state or foreign country has intervened in a custody dispute to vindicate its sovereignty or guarantee the dignity of its court's orders.

In its initial briefing, the tribal council cites a single eminent domain case to support its argument. In *United States v. City of Tacoma, Washington*,[17] the Ninth Circuit identified multiple bases to establish the United States's standing to sue to invalidate a city's condemnation proceedings involving land Congress had allotted to tribal members, including injury to its property rights in the condemned land.[18] The court noted that in addition to its rights as property holder and its status as trustee of tribal lands, "the United States has an independent, governmental interest when it has not been made a party in condemnation proceedings of restricted Indian lands."[19] This reference to an independent governmental interest, upon which the tribal council relies,

---

[15](...continued)
Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." There is no evidence in the record that the tribal council chose to intervene in J.W.'s CINA proceeding, where it had a statutory right to do so under ICWA.

[16]     *John I*, 982 P.2d 738, 747 (Alaska 1999) ("Based on this case law, the conclusions of the Bureau of Indian Affairs, and the purpose of ICWA as expressed in its text and legislative history, we conclude that ICWA does not apply to this inter-parental custody dispute.").

[17]     332 F.3d 574 (9th Cir. 2003).

[18]     *See id.* at 579.

[19]     *Id.* (citing *United States v. Hellard*, 322 U.S. 363, 366 (1944)).

relates to the unique supervisory role of the federal government over Indian affairs, a role in which Congress has plenary power over tribal sovereignty and can restrict the alienation of tribal territory.[20] While the tribal council certainly does have an interest in adjudicating the domestic affairs of its members,[21] *City of Tacoma* is inapposite to the question of the tribal council's independent standing to appeal in this child custody matter.[22]

Following oral argument, the tribal council provided this court with additional authority in support of its contention that it had standing to appeal. But like *City of Tacoma*, the cases cited do not speak clearly or persuasively to the tribal council's standing to appeal in this matter. The supplemental authority includes cases on ballot

---

[20] *See Hellard*, 322 U.S. at 368 ("Restricted Indian land is property in which the United States has an interest. . . . The governmental interest throughout the partition proceedings is as clear as it would be if the fee were in the United States. The United States as guardian of the Indians is necessarily interested either in obtaining partition in kind where that course conforms to its policy of preserving restricted land for the Indians or in seeing that the best possible price is obtained where a sale is desirable." (citations omitted)); *United States v. Candelaria*, 271 U.S. 432, 443-44 (1926) ("The Indians of the pueblo are wards of the United States, and hold their lands subject to the restriction that the same cannot be alienated in any wise without its consent. A judgment or decree which operates directly or indirectly to transfer the lands from the Indians, where the United States has not authorized or appeared in the suit, infringes that restriction. The United States has an interest in maintaining and enforcing the restriction, which cannot be affected by such a judgment or decree.").

[21] *See John I*, 982 P.2d at 754-59.

[22] Moreover, *City of Tacoma* does not directly address the question of an intervenor's standing to appeal because the United States brought the original action and the defendant city raised the federal government's standing as a ground to dismiss the action. *See City of Tacoma*, 332 F.3d at 578.

initiative sponsors' standing to appeal judicial invalidation of the initiative,[23] a state's standing to appeal a suit in which it was a named defendant in the original action,[24] and the ability of governmental entities to appeal decisions that interfere with their statutory duties to the public.[25] None of these categories of cases is applicable here.

The tribal council also cites *Matter of J.R.S.*,[26] a case in which we recognized a tribe's right to intervene in adoption proceedings of a child member before a superior court. In *J.R.S.* we concluded that although ICWA did not explicitly grant tribes a right to intervene in adoption proceedings,[27] it did create an interest in "defend[ing] the Act's preference system" that Civil Rule 24(a) was designed to protect,

---

[23]     *See Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991).

[24]     *See State ex rel. Merrill v. Ohio Dep't of Natural Res.*, 955 N.E.2d 935 (Ohio 2011).

[25]     *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 448 (1940) (permitting the SEC to intervene in and appeal bankruptcy proceedings because it is "specially charged by various statutes with the protection of the interests of the investing public"); *Mary R. v. B. & R. Corp.*, 196 Cal. Rptr. 871, 875 (Cal. App. 1983) (holding that board had "standing [to collaterally attack gag order] based on its interest in fulfilling its statutory obligations to supervise and regulate the practice of medicine in this state and to investigate allegations of physician misconduct"); *Schaghticoke Indians of Kent, Conn., Inc. v. Potter*, 587 A.2d 139, 142 (Conn. 1991) (holding that state has standing to appeal an action initiated by a tribe based on its "statutory obligation to oversee the . . . reservation," which made it "responsible under the statute for damage to the reservation and misuse of tribal funds . . . [and] thus authorized to appeal").

[26]     690 P.2d 10 (Alaska 1984).

[27]     *See id.* at 15 ("The Act itself does not give a tribe the right to intervene in an adoption proceeding."); Indian Child Welfare Act, 25 U.S.C. § 1911(c) (2012) (creating a right of intervention "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child," but omitting any similar right in adoption proceedings).

and that the superior court therefore should have permitted the tribe to intervene as of right.[28] Unlike *J.R.S.*, this inter-parent custody dispute is not covered by ICWA.[29] And *J.R.S.* does not support the conclusion that the tribal council has standing to appeal in this case. It is a case about intervening in an on-going proceeding, rather than appealing. The tribal council in this case seeks to extend an inter-parent custody dispute that the original parties did not seek to continue. The law of litigant standing, aimed at ensuring that the courts do not attempt to "resolve abstract questions or issue advisory opinions,"[30] encompasses different considerations in these two situations.

### b. Neither parent appealed.

Myre chose not to file an appeal of the superior court's custody modification decision, and it appears that at one point she agreed that it would be appropriate for the superior court to enter an interim order.[31] In considering the tribal council's interest in bringing an appeal, we note that recognition of the tribal council's standing would prioritize its interest over that of Myre, who elected not to appeal the superior court's decision. Allowing for the tribal council's standing in this appeal could lead to a situation where both parents choose to pursue modification in state court and

---

[28] *J.R.S.*, 690 P.2d at 18.

[29] *See John I*, 982 P.2d 738, 747 (Alaska 1999).

[30] *Keller v. French*, 205 P.3d 299, 302 (Alaska 2009) (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004)).

[31] Following her arrest and the State's assumption of protective custody of J.W., Myre filed a response to Wheeler's motion for immediate modification of custody in the superior court. Her response "recognize[d] entirely the appropriateness under the circumstances of [the superior court] modifying the *interim* custody arrangement in this matter so that [J.W.] can be suitably placed in a home that is best for him, and also [understood] that such placement [would] likely be with his biological father." (Emphasis in original.)

are satisfied with the superior court's resolution of their custody modification dispute, but the tribe appeals that modification decision on jurisdictional grounds.[32] This would run counter to our statement in *John v. Baker* that "Native parents who live in Anchorage and do not wish to avail themselves of a distant tribal forum will still be able to resolve their custody disputes in Anchorage Superior Court."[33]

We emphasize that neither party seeking custody of J.W. appealed the superior court's decision. The court system exists to resolve cases or controversies that arise between parties, and its proper functioning requires careful attention to those parties' wishes and actions. Individuals and organizations may sincerely seek judicial acceptance of legal theories, but that sincerity does not expand the courts' role beyond resolving active cases or controversies at the request of involved parties.

Our decision to dismiss this appeal should not be read as an invitation to grant tribal courts anything less than "the respect to which they are entitled as the judicial institutions of sovereign entities."[34] That respect continues to inform our analysis. But the respect due to tribal courts does not translate into independent standing to appeal a superior court's inter-parent child custody decision on jurisdictional grounds when neither party has chosen to appeal from the superior court decision.

We conclude that because the parents elected not to appeal the superior court's decision, the tribal council's interest does not rise to the level necessary to establish standing to appeal the child custody modification order.

---

[32] Wheeler does not argue on appeal that the superior court's grant of permissive intervention to the tribal council was improper, only that the tribal council lacks standing to appeal. The propriety of the superior court's grant of permissive intervention to the tribal council is therefore not before us.

[33] *John I*, 982 P.2d at 761.

[34] *Simmonds v. Parks*, 329 P.3d 995, 1010-11 (Alaska 2014).

## V. CONCLUSION

We DISMISS the tribal council's appeal for lack of standing.