UNITED STATES of America, Eugene Segundo, Appellants,

v.

John W. PRESTON, Jr., etc., et al., Appellees.

UNITED STATES of America, Carrie Pierce McCoy, Appellants,

v.

John W. PRESTON, Jr., etc., et al., Appellees.

UNITED STATES of America, Ruth Elaine Patencio, Appellants,

v.

John W. PRESTON, Jr., etc., et al., Appellees.

Nos. 19361–19363.

United States Court of Appeals Ninth Circuit.

Oct. 28, 1965.

Rehearing Denied Dec. 2, 1965.

---

Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Herbert Pittle, Attys., Dept. of Justice, Washington, D. C., Manuel L. Real, U. S. Atty., James S. Okazaki, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Oliver O. Clark, La Canada, Cal., Elmer H. V. Hoffman, Morris Lavine, Los Angeles, Cal., for appellees.

Before POPE, MERRILL and BROWNING, Circuit Judges.

POPE, Circuit Judge.

These are appeals from orders in three actions denying appellants' motions to dismiss on the grounds that the district court lacked jurisdiction and that the claims failed to state claims warranting relief. In each case the trial judge made the certificate provided for in Title 28 § 1292(b) so as to authorize an immediate appeal. This court permitted the appeals as provided in that section.

At the oral argument appellees asserted for the first time that the appeal was not taken in time. Following that, counsel for appellants filed affidavits and documents for the purpose of showing that the appeal was perfected within time. We find that the appeal was timely taken and perfected.[1]

Each of these actions was brought against the United States and an individual defendant. Except for the fact that the individual defendants differ, the complaints in the three cases are identical. For convenience we state the allegations in No. 19,361 in which Eugene Segundo was named as an individual defendant along with the United States.[2]

The complaint sets out the following allegations. The defendant Segundo is and was a native American of Indian birth and a regularly enrolled member of the Agua Caliente Band of Mission Indians of California. This band of Indians had been in possession of the Agua Caliente reservation embracing 30,000 acres of land in Riverside County, California. Title to the land was vested in the United States as trustee for the Indians. The Act of Congress commanded that land within the reservation be allotted to the members of the band, but the Secretary of the Interior refused to allot lands to the individual Indians. An action was brought by several of the adult members of the band to compel the allotment but that action was unsuccessful in the district court. The denial of relief was affirmed by the Court of Appeals and certiorari was denied by the United States Supreme Court.[3]

The complaint further alleges that thereafter the adult members of the band of Indians consulted two of the plaintiffs,

---

1. The district judge's certification was entered June 12, 1964. The ten days allowed for making application to this court expired June 22, a Monday. The application filed here bears the filing mark June 23. The evidence produced by the appellants convinces us that the application must have reached the custody of the Clerk on June 22, and that any presumption arising from the June 23 filing mark was successfully rebutted. Silverton v. Valley Transit Cement Company, 9 Cir., 237 F.2d 143.

2. In that case the United States and Eugene Segundo are named as appellants. The appeal before us was taken by the United States in its own name. The disposition which we make of this case makes it unimportant that a separate notice of appeal was not filed on behalf of Segundo.

3. See St. Marie v. United States, 9 Cir., 108 F.2d 876; 311 U.S. 652, 61 S.Ct. 35, 85 L.Ed. 417.

Clark and Sallee, and orally requested them to commence an action in the United States District Court for the benefit of the band in the name of Lee Arenas to seek an adjudication which would compel the Secretary to make such allotments. Said plaintiffs agreed to institute that action as attorneys for said Indians and prosecute it to final judgment and do everything necessary to procure such allotments in severalty charging their fees upon a contingent basis. Pursuant to this agreement an action was instituted by such attorneys on December 24, 1940 in the name of Lee Arenas only, as plaintiff, against the United States to compel the allotment under the statute. "That said action was brought in the name of said Lee Arenas for the reason that he had not been a party to such former action, and therefore was not bound thereby." Thereafter summary judgment was entered in that action in favor of the defendant the United States and the judgment was affirmed by the Court of Appeals on June 30, 1943.[4] Certiorari was granted by the Supreme Court and on May 22, 1944, the judgment of the Court of Appeals was reversed and the cause was remanded for a trial on its merits.[5] On retrial of the cause judgment was entered directing allotment to Arenas of the lands claimed by him, and this judgment was affirmed on appeal.[6] Certiorari was denied. Ultimately the Secretary's refusal to allot lands to Arenas as directed in the judgment was compelled by mandamus and about the month of May, 1948, the writ directed that the allotment be made.

The complaint continues that during this period of time, while the aforesaid matters were proceeding, defendant Segundo pursuant to his former oral agreement of employment executed a contract in writing with attorneys Clark and Sallee, and John W. Preston, which contract is alleged to have been attached to the complaint.[7] The services of these attorneys was completed on June 30, 1963 "by the consent of all the members of said band properly given to abandon any further proceedings in respect of said allotments, and to accept said allotments as theretofore made." Plaintiffs allege that due to services rendered by them as attorneys employed by the defendant Segundo he has received an allotment of land which has a value in excess of $400,-000; that reasonable compensation for the services rendered to Segundo is at least 25 percent of the value of the allotment made to him no part of which has been paid or satisfied, and that all of the services rendered and everything done by the said attorneys was for the benefit of all the members of the band of Indians and was so understood by them.

Judgment was prayed for the reasonable value of the services rendered by Preston, Sallee and Clark under their contract of employment; that payment of the judgment be secured by the imposition of a lien upon the land allotted to the defendant Segundo, and that plaintiffs recover from him his proportionate share of the expenses incurred in the performance of such services.

4. See Arenas v. United States, 9 Cir., 137 F.2d 199.

5. See Arenas v. United States, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363.

6. See United States v. Arenas, 9 Cir., 158 F.2d 730.

7. The complaint as filed shows no such writing made by or on behalf of Segundo. Attached to the complaint, however, is a copy of a document marked "Power of Attorney and Contract". It is signed by Frank Lario, stated to be an enrolled Indian of the Agua Caliente Indian reservation. For the purposes of this opin-

ion we assume that plaintiffs intended to attach to their complaint copies of a similar power of attorney signed by Segundo. These instruments named the attorneys mentioned as the attorneys for the party signing the instrument to do all things lawful, proper and right in behalf of the signer as a member of the Indian tribe and reservation in respect to all rights including the signer's allotments selected. Power and authority was granted to appear before all departments of the United States and in any courts "I hereby agreeing to pay my said Attorneys upon a quantum meruit basis for services rendered. * * *"

Reduced to its essentials the plaintiffs' alleged cause of action is laid in contract. The essence of the contract was that Segundo, among others, made an agreement in writing with plaintiff attorneys. They would commence an action in the name of Lee Arenas to seek an adjudication that the Secretary was obliged to allot land to the members of the band of Indians. The plaintiffs would in that connection prosecute the action to judgment and do everything required to protect the interests of the members of the band in respect to the allotments, all upon a contingent basis whereby they would receive nothing for their services unless successful, but if successful, they would receive a reasonable compensation for their services in addition to their expenses incurred; that since the action on behalf of Lee Arenas was successful and plaintiffs' services under the said employment were completed on June 30, 1963, at which time allotments had been made, including an allotment to Segundo, which is worth in excess of $400,000, the plaintiffs' compensation is due and no part of it has been paid, and judgment is sought accordingly. In short it is alleged that Segundo entered into a contract in writing with the plaintiffs; that plaintiffs have performed their part of it and are entitled to pay for their services and accordingly they seek judgment. Although the United States is named as a defendant, no claim is stated against it. It is not alleged that the United States entered into any contract to pay plaintiffs anything.

■ Plaintiffs undertake to invoke jurisdiction of the district court under Title 28 U.S.C. §§ 1360 and 2201 and Title 25 § 345. We are unable to perceive how any of these sections have any application here. § 1360 provides in substance that the State of California shall have jurisdiction over civil causes of action to which Indians are parties which arise in the areas of Indian country to the same extent that such State has jurisdiction over other civil causes of action. The most that this could mean is that the plaintiffs might have sued Segundo in a court of the State of California. § 2201 authorizes action seeking declaratory relief. That section in itself adds nothing to the jurisdiction of the federal courts. As has been noted the section provided an additional remedy in the federal courts but did not extend their jurisdiction. "But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194.

■■ Section 345, Title 25, the main text of which is set out in the margin,[8] has no relation whatever to the actions brought here. It permits action to be brought by persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land and the action is one to determine the right of such person of Indian blood to an allotment of land under any law or treaty.

8. "§ 345. Actions for allotments. All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, * * * Provided, That the right of appeal shall be allowed to either party as in other cases. * * *"

There is no claim that the plaintiffs in this case are persons of Indian blood nor is this action one to claim an allotment of land. So far as the United States is concerned, even if a claim against it had been asserted here, if cannot be sued without its consent. Section 345 gives no general consent of the United States to be sued even in connection with its administration of allotments, much less for the recovery of attorneys' fees of this kind. United States v. Eastman, 9 Cir., 118 F.2d 421, 423. It is elementary that the United States cannot be sued without its consent. Nothing called to our attention here points to any such consent. The suit against Segundo is not claimed to be predicated upon any diversity of citizenship and hence that portion of the action falls to the ground.

The appellees undertake to argue that the case of Arenas v. Preston, 9 Cir., 181 F.2d 62, supports their claim that § 345 permits recovery of attorneys' fees here since attorneys' fees were allowed and recovered in that case. Plaintiffs wholly misapprehend the character and basis of the allowance of attorneys' fees in that case. The award there was through a supplemental decree of the district court rendered in the case that had been brought by Arenas under § 345 for the purpose of enforcing his right to an allotment of land in the Palm Springs Indian reservation. In the main action Arenas succeeded in establishing his right to that allotment and in imposing a trust upon the land for his benefit and in procuring an adjudication that the United States held those particular parcels in trust for him. The decision of this court in upholding that

supplemental decree for attorneys' fees was expressly based upon the holding in United States v. Equitable Trust Company, 283 U.S. 738, 744, 51 S.Ct. 639, 641, 75 L.Ed. 1379: "It is a general rule in courts of equity that a trust fund which has been recovered or preserved through their intervention may be charged with the costs and expenses, including reasonable attorney's fees, incurred in that behalf; and this rule is deemed specially applicable where the fund belongs to an infant or incompetent who is represented in litigation by a next friend."

In an earlier unsuccessful attempt by these plaintiffs to recover attorneys' fees for the same services here involved, Preston v. United States, 9 cir., 284 F.2d 514, this court referred to situations like that in the Equitable Trust case and said (p. 516): "By such action the property was brought into court and thereby was saved, and the interest of each in it less a fair proportion of litigation costs was delivered over by the court when the interested party came into court to claim it." No such property has been brought into court here and the attempted recovery of fees and costs is not incidental or supplemental to any such action.[9]

█ Nor can it be argued that Arenas was a class action and defendants here a part of the class. As stated in Preston v. United States, 284 F.2d 514, 515, "[T]he doctrine of class actions does not apply to this litigation." The case which the plaintiffs prosecuted on behalf of Lee Arenas, Arenas v. United States, 137 F.2d 199, 322 U.S. 419, was not a class action as the record in that case shows.[10]

9. There appears to be substantial authority sustaining the award of costs including attorneys' fees in a suit where trust property has been recovered. See 90 C.J.S. Trusts § 474, p. 947, which cites among other cases Churchill v. Peters, 57 Cal. App.2d 521, 134 P.2d 841.

10. The complaint in the Arenas case discloses that it was brought to recover allotments made to Francisco Arenas, plaintiff's father, Guadalupe Arenas, his wife, Simon Arenas, his brother, and

plaintiff himself. Plaintiff claimed to have succeeded to the interests of the other members of his family by reason of their deaths and he sought to obtain a trust patent or patents to all of the lands mentioned, that is to say, those allotted to himself and to Francisco, Guadalupe and Simon Arenas. An action cannot be deemed a class action unless shown to be such by the complaint. Johnson v. Riverland Levee, 8 Cir., 117 F.2d 711, 714, 134 A.L.R. 326; and see Moore Federal Practice, 2d ed., vol. 3, § 23.06, pp. 3423–

Thus under no possible circumstances can it be said that the district court here had within its custody funds or property upon which it was imposing a trust as was the case in Arenas v. Preston, supra, 181 F.2d 62.

In a last ditch effort to bring the present action within § 345 of Title 25, plaintiffs contended for the first time during the oral argument and again in a supplemental brief filed subsequent to the oral argument that this case is one to recover water rights pertaining to the Segundo allotment or to compel the Secretary to reserve the waters of the reservation for apportionment to this allottee. It is claimed that until such water or water rights have been apportioned, the allotment process has not been completed and therefore this action is maintainable under § 345, supra, and on the authority of Arenas v. Preston, supra, 181 F.2d 62.

Plaintiffs conceded that as above stated the members of the band on June 30, 1963, consented "to abandon any further proceedings in respect of said allotments and plaintiff accepted said allotments as theretofore made." The complaint states that the United States "has concluded said allotment process only under judicial compulsion obtained for the benefit of these Indians by said services of said John W. Preston, David D. Sallee, and Oliver O. Clark, and the waiver by said Indians, during June of this year, of their invaluable rights under said allotment process, to a reservation of adequate easements for vehicular travel upon the allotted lands for the benefit of landlocked land, and the reservation, and apportionment of the waters which occur upon said Reservation, for the benefit of said allotted lands * * *" Thus the complaint expressly alleges a waiver by the Indians of their rightful apportionment of the waters which occurred upon the reservation. With respect to this the plaintiffs say: "The law is that the allottees are not competent to waive those benefits and their trustee cannot waive them."

As was said in the related case of United States v. Pierce, 9 cir., 235 F.2d 885, 892, "The facts have not been alleged or developed to the extent that would give the district court jurisdiction to interfere with the Secretary of the Interior's administration of the tribal waters." Not only is there a complete absence of allegations or prayer which would sustain an action against the United States to recover water rights or have water rights allotted, but action by the Secretary for the allotment of waters is wholly unnecessary and inappropriate. Under the rule of Winters v. United States, 207 U.S. 564, 28 S.Ct. 207, 52 L. Ed. 340, as soon as a reservation for Indians has been established, there is an implied reservation of rights to the use of the waters which arise, traverse or border upon the Indians' reservation, which rights may be exercised in connection with the Indian lands. This rule applies although the waters are not mentioned in the treaties, executive orders or other means used to establish the reservations. Thus when Arenas or Segundo received his allotment, he had also acquired a right to use waters on the reservation. Since water rights are already theirs, a suit to procure them would be meaningless. The doctrine of the Winters case has been enunciated many times. See United States v. Powers, 305 U.S. 527, 59 S.Ct. 344, 83 L.Ed. 330; United States v. Ahtanum Irr. District, 9 cir., 236 F.2d 321, 327; State of Arizona v. State of California, 373 U.S. 546, 599, 83 S.Ct. 1468, 10 L.Ed.2d 542.

It is true that under Title 25 § 381 the Secretary of the Interior is authorized

---

3424, footnote 7. The present complaint discloses that there was no attempt in the Arenas case to prosecute a class action. It is alleged in paragraph XII that it was agreed to institute that action "in the name of Lee Arenas only, as Plaintiff." Even if pleading requirements had been met, any class suit brought would be no more than a spurious class suit which, as Moore points out, is no more than a "permissive joinder device"; "It is an invitation and not a command performance." (§ 23.10 pp. 3442, 3443.) See California Apparel Creators v. Wieder of California, 2d Cir., 162 F.2d 893, 896–897, 174 A.L.R. 481.

to prescribe rules and regulations for distribution of the waters of the reservation among the Indians residing thereon, but neither this nor any other section of the law authorizes or permits an action by an Indian for the recovery, establishment or allotment of waters. He owns the water the minute the reservation is created, and his rights become appurtenant to his land [11] the minute he acquires his allotment.

The provision of § 381 authorizing regulation of the use of water parallels the statutory provisions which authorize the Secretary to adopt regulations relating to the sale of timber on Indian allotments which were discussed in United States v. Eastman, supra. As we have indicated this court there held that § 345 of Title 25 did not authorize suit against the United States to support the claims of Indian allottees to a right to dispose of the timber on their allotments. We said: "It is plain from the whole statute that Congress intended merely to authorize suits to compel the making of allotments in the first instance." (118 F.2d 423) We think it is equally plain that the Indian allottee is not authorized by § 345 to sue the United States for the purpose of claiming or establishing any assignment or distribution of water rights, rights which he automatically acquired as a result of the creation of the reservation as demonstrated in the Winters case.

█ All three of the cases in these appeals suffer from the same defect. The complaint in each case is identical with that in No. 19,361, which we have described, except that the individual defendants are Carrie Pierce McCoy in No. 19,362 and Ruth Elaine Patencio in No. 19,363. The district court had no jurisdiction to entertain any of these cases. It had no jurisdiction as against the United States for the United States had not consented to this suit. Section 345, supra, does not cover it. The court had no jurisdiction to entertain the suits as against Eugene Segundo or Carrie Pierce McCoy or Ruth Elaine Patencio, for there is no diversity of citizenship here to warrant what are essentially suits on contracts to recover attorneys' fees.

Accordingly the orders in these cases denying motions to dismiss for want of jurisdiction must be reversed. The causes are remanded to the district court with directions to dismiss all three cases for want of jurisdiction.

11. "Respondents maintain that under the Treaty of 1868 waters within the Reservation were reserved for the equal benefit of tribal members (Winters v. United States, 207 U.S. 564 [28 S.Ct. 207]) and that when allotments of land were duly made for exclusive use and thereafter conveyed in fee, the right to use some portion of tribal waters essential for cultivation passed to the owners. The respondents' claim to the extent stated is well founded." United States v. Powers, supra, at p. 532, 59 S.Ct. at p. 346.