Lena HARKINS and Adam Harkins, for themselves and for all those members of The Five Civilized Tribes similarly situated, Appellants,

v.

UNITED STATES of America, Appellee.

No. 9048.

United States Court of Appeals Tenth Circuit.

March 2, 1967.

Rehearing Denied May 17, 1967.

John A. Claro and Bert Barefoot, Jr., Oklahoma City, Okl. (Edward H. Moler, Oklahoma City, Okl., on the brief) for appellants.

Carolyn R. Just, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

DELMAS C. HILL, Circuit Judge.

The plaintiffs, restricted Choctaw Indians, filed this class action for themselves and all other members of the Five Civilized Tribes similarly situated. They alleged that certain income taxes were assessed against them by the United States and paid by the government's representatives out of trust funds maintained by the Department of the Interior and the Bureau of Indian affairs for the restricted Indians; that these taxes were paid on income received from oil and gas lease bonuses executed on restricted, allotted lands; that it is "probable" that payment of these taxes began in 1928, although they have no direct knowledge of the time when such payments began; that the taxes so assessed on lease bonuses were illegal[1] and that the payment of them by the government representatives violated its trustee-ship duty to the Indians. By their alternative cause of action, the plaintiffs asked the District Court to order the government to account for all taxes so collected on income received by the restricted members of the Five Civilized Tribes for oil and gas lease bonuses on allotted lands and to impress a constructive trust on that sum, for the benefit of the Indians. On the government's motion, the lower court dismissed the action, stating that, "[w]aiver of sovereign immunity is not to be the subject of implication" and that the suit was barred by the Doctrine of sovereign immunity.

The appellants admittedly have not complied with the statutes regulating tax refund suits[2] and the only question on appeal as framed by appellants is: "Whether the District Court erred when it held that the United States, as guardian of the restricted Indian wards of the Five Civilized Tribes, did not impliedly waive its sovereign immunity and consent to be sued for an illegal invasion of the appellants' trust funds."

Appellants contend there are two Acts of Congress whereby the United States has consented to a suit such as this one. The first is the Act of 1894, as amended, 25 U.S.C. § 345. That Act provides, in pertinent part: "All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any allotment Act or under any grant made by Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of an Act of Congress, may commence and prosecute or defend any ac-

---

1. In support of this position, appellants rely on Daney v. United States, D.C. Kan., 247 F.Supp. 533, affirmed, United States v. Daney, 10 Cir., 370 F.2d 791.

2. Appellants, by their first cause of action, prayed for a refund of taxes but that "class action claim for refund" was abandoned on appeal. The government on appeal, however, both in its brief and oral argument treated the case as if it were a tax refund case and dealt with the "constructive trust" allegation briefly only as an afterthought. We think this was a manifestly incorrect approach. The appellants made it abundantly clear both in their initial and reply briefs that they were appealing the case only on the "constructive trust" theory alleged in the second cause of action.

tion, suit, or proceeding in relation to their right thereto in the proper district court of the United States * * *."

■ While we recognize that Congressional "authorization to bring an action involving restricted lands 'confers by implication permission to sue the United States,' " [3] we hold that this statute does not waive the immunity of the United States government to this suit. 25 U.S.C. § 345 "permits action to be brought by persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land and the action is one to determine the right of such person of Indian blood to an allotment of land under any law or treaty." [4] For this limited purpose, the United States has consented to suit. [5] There is no question here concerning the allotment of land. At issue is the manner in which government agents have dealt with income from the land. "Section 345 gives no general consent of the United States to be sued even in connection with its administration of allotments * * *," [6] and that section gives no consent, express or implied, to this suit.

Appellants also rely on the Act of April 12, 1926, ch. 115, § 3, 44 Stat. 240, as constituting an "implied waiver of sovereign immunity" to this suit. That statute, in pertinent part, provides: "Any one or more of the parties to a suit in the United States courts in the State of Oklahoma or in the State courts of Oklahoma to which a restricted member of the Five Civilized Tribes in Oklahoma * * * are parties * * * and claiming or entitled to claim title to or an interest in lands allotted to a citizen of the Five Civilized Tribes or the proceeds, issues, rents and profits derived from the same, may serve written

notice of the pendency of such suit upon the Superintendent for the Five Civilized Tribes, and the United States may appear in said cause within twenty days thereafter, or within such extended time as the trial court in its discretion may permit, and after such appearance or the expiration of said twenty days or any extension thereof the proceedings and judgment in said cause shall bind the United States and the parties thereto to the same extent as though no Indian land or question were involved." The statute states that "in no event shall the United States be bound unless written notice is had as herein specified: * *." In the event suit is brought in a state court, a proviso further states that, after service of notice of a suit is made on the Superintendent of the Five Civilized Tribes, the United States may remove the action to the United States District Court and the action shall then proceed in the District Court as if it had been originally commenced there.

This suit is one to which restricted members of the Five Civilized Tribes are parties. Appellants do claim title to or an interest in "proceeds, issues, rents and profits" derived from allotted lands. They did not serve written notice of the pendency of the suit upon the Superintendent of the Five Civilized Tribes, but appellants contend that the portion of the statute relating to notice and removal "is inapplicable to the instant facts, for the reason that the United States was made a party defendant in a United States District Court at the outset of this action, and therefore notification and removal has become unnecessary." [7]

Because we think the 1926 Act does not give the sovereign's consent to this suit,

---

3. United States v. Hellard, 322 U.S. 363, 368, 64 S.Ct. 985, 988, 88 L.Ed. 1326.

4. United States v. Preston, 9 Cir., 352 F.2d 352, 355.

5. Arenas v. United States, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363; Gerard et al. v. United States et al., 9 Cir., 167 F.2d 951; United States v. Preston, supra;

United States v. Pierce, 9 Cir., 235 F.2d 885; United States v. Arenas, 9 Cir., 158 F.2d 730, cert. denied, 331 U.S. 842, 67 S.Ct. 1531, 91 L.Ed. 1853.

6. United States v. Preston, supra, 352 F.2d at 356.

7. Appellants' brief, p. 23.

we need not decide whether the service of process as made in this case satisfies the statute.

House Report No. 322, 69th Cong., 1st Session, reported on the bill which later became the Act of April 12, 1926. That report states, at page 2, that: "Section 3 provides only where the interest of a restricted Indian of the Five Civilized Tribes is being litigated in the State Courts that service may be had upon the Government, and the Government is given the right to choose the forum in which the suit may be tried and may transfer such case to the United States District Court upon motion in the event that the Government chooses to do so. If said case is not transferred the decision of the court is final, and it would prevent a new suit from being instituted for and on behalf of a restricted Indian thereafter by the Government." The report also tells us that "[t]he entire bill is designed to stabilize titles in eastern Oklahoma and it is expected that it will add value to these lands * * *."

■ As the United States District Court for the Northern District of Oklahoma has observed, the purpose of Section 3 of the Act of April 12, 1926, was "to allow the intervention by the United States in suits wherein a party was claiming title to or an interest in lands allotted to a citizen of the Five Civilized Tribes, or the proceeds, issues, rents and profits derived from same. The purpose further was to allow the removal of such suits from a state court to the United States District Court. This section of the Act of 1926 is remedial in nature to insure a permanence of title. The suits referred to in the Section were those where, primarily, title was in dispute. Prior to the Act of 1926 the United States, not being a party to an action involving restricted Indian lands when adjudicated by the state or federal courts could re-litigate at their instance to have such prior judgment set aside."[8]

Here, the United States is making no intervention nor is there any question about land titles. Appellants, in a direct suit, seek to adjudicate the liability of and recover a judgment against the United States. The statute certainly does not expressly consent to such a suit; nor can we imply from the Act that Congress has consented to this suit.[9]

■ Appellants also suggest that since the government has voluntarily undertaken its trustee relationship to the Indians, it should not be permitted to hide behind the cloak of sovereign immunity when an allegation is made that it has violated the trust. But as the Supreme Court has said: "The United States, as sovereign, is immune from suit save as it consents to be sued * * and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[10] Since the United States has not consented to this suit the District Court was without jurisdiction to entertain it and the complaint was properly dismissed.

Affirmed.

8. Springer v. Townsend, N.D.Okla., 222 F. Supp. 231, 235, affirmed on other grounds, Springer v. Townsend, 10 Cir., 336 F.2d 397.

9. This conclusion is buttressed by a careful analysis of the cases interpreting Section 3 of the Act of 1926. See e. g., Sadler v. Public Nat. Bank and Trust Co. of New York, 10 Cir., 172 F.2d 870; State of Oklahoma ex rel. Commissioners of Land Office v. United States, 10 Cir., 155 F.2d 496, 498; United States v. Anglin and Stevenson, 10 Cir., 145 F.2d 622, 629; House v. United States, 10 Cir., 144 F.2d 555, 559; Town of Okemah, Okl. v. United States, 10 Cir., 140 F.2d 963; United States v. Thompson, 10 Cir., 128 F.2d 173; United States v. Fixico, 10 Cir., 115 F.2d 389; Caesar v. Burgess, 10 Cir., 103 F.2d 503, 506; Springer v. Townsend, N.D.Okl., 222 F.Supp. 231, affirmed on other grounds, Springer v. Townsend, 10 Cir., 336 F.2d 397.

10. United States v. Sherwood, 312 U.S. 584, 585, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058; Cotter Corporation v. Seaborg, et al., 10 Cir., 370 F.2d 686, and cases there cited.