Alex **SCHOLDER**, individually and on behalf of others similarly situated, Plaintiffs,

v.

**UNITED STATES of America; Department of the Interior; Bureau of Indian Affairs; Stewart L. Udall, Secretary of the Interior; Robert L. Bennett, Commissioner, Bureau of Indian Affairs; William E. Finale, Director, Sacramento Office, Bureau of Indian Affairs; and Jess T. Town, Field Representative, Riverside, California Area Field Office, Bureau of Indian Affairs, Defendants.**

No. 68–224–S.

United States District Court
S. D. California.
April 23, 1969.

George F. Duke, Lee J. Sclar, Santa Rosa, Cal., Richard B. Collins, Jr., Berkeley, Cal., Robert S. Pelcyger, David H. Getches, Escondido, Cal.; Alexander, Inman & Fine, Beverly Hills, Cal., for plaintiffs.

Edwin L. Miller, Jr., U. S. Atty., Charles J. Fanning, Asst. U. S. Atty., San Diego, Cal., for defendants.

## MEMORANDUM OF DECISION

SCHWARTZ, District Judge.

This is a class action brought by individual Indians and Indian bands to enjoin the Secretary of the Interior and the Bureau of Indian Affairs from spending Indian irrigation project funds for the benefit of a non-Indian owner of land which is situated within an Indian irrigation system. The cause came on to be heard upon the parties' cross-motions for summary judgment.

The original complaint seeking declaratory and injunctive relief, filed on September 16, 1968, was brought by Alex Scholder, as an individual on behalf of himself and all other Indians similarly situated. An amended complaint filed on September 27, 1968, named the Pala Band of Mission Indians and the Rincon Band of Mission Indians as additional plaintiffs, on behalf of themselves and all other Indian tribes similarly situated.

Upon filing their action, plaintiffs moved for a preliminary injunction and temporary restraining order enjoining further expenditure of money for construction of a lateral pipeline allegedly benefitting only a non-Indian. This court issued a temporary restraining order on September 16, 1968, which was extended on September 23, 1968. Defendants moved to dismiss and vigorously resisted issuance of a preliminary injunction, principally on the grounds that this court had no subject-matter jurisdiction. After a hearing, a preliminary injunction was issued on October 3, 1968.

■ The court found that it had jurisdiction only over the claims of the plaintiff Indian tribes under 28 U.S.C. § 1362. The claims of the individual plaintiffs, Alex Scholder and the class of individuals represented by him, were dismissed for lack of subject-matter jurisdiction upon a determination that no jurisdiction in this case was conferred by 28 U.S.C. §§ 1353, 1361 or 25 U.S.C. § 345. As stated in this court's order filed on October 3, 1968, no jurisdiction over the individual plaintiffs' claims is conferred by 28 U.S.C. § 1353, or 25 U.S.C. § 345 because no claim for an original allotment or for an allotment in the first instance is involved here. See United States v. Eastman, 118 F.2d 421 (9th Cir. 1941); United States v. Preston, 352 F.2d 352 (9th Cir. 1965); Prairie Band of Pottawatomie Indians v. Puckkee, 321 F.2d 767 (10th Cir. 1963); Seifert v. Udall, 280 F.Supp. 443 (D.Mont.1968). Nor has this court jurisdiction pursuant to 28 U.S.C.A. § 1361 inasmuch as said section authorizes mandamus only to compel performance of a ministerial duty or to compel a discretionary decision where no decision has been made. Seebach v. Cullen, 224 F.Supp. 15 (D.Cal.1963); Hill v. United States Board of Parole, 257 F. Supp. 129 (D.C.Pa.1966). In the instant case, as will appear in the discussion of the merits, the court is asked to adjudge the propriety of a discretionary decision already made by the Secretary through the Bureau.

■ Jurisdiction over the claims of the Pala Band of Mission Indians and the Rincon Band of Mission Indians is conferred by 28 U.S.C. § 1362 inasmuch as a real and substantial controversy as to the construction and effect of certain statutes and constitutional provisions is alleged. However, section 1362 does not authorize jurisdiction over the claims of individual Indians. Quinault Tribe of Indians of Quinault Reservation in State of Washington v. Gallagher, 368 F.2d 648 (9th Cir. 1966), cert. den., 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626. Nor should this court assume pendent jurisdiction of the individual plaintiffs' claims under the principles of Hurn v. Oursler, 289 U.S. 283, 53 S.Ct. 586, 77

L.Ed. 1148 (1933), and cases following that decision, since in this case two distinct groups of plaintiffs each state their own causes of action (albeit the same theory of recovery), and only one of such groups has a primary right to be in federal court at all. This is to be distinguished from the case where two theories, one based on state law and one based on federal law, are asserted by one plaintiff who has a substantial federal claim. In the latter case, the court can assume pendent jurisdiction of the plaintiff's state claim as well as the federal claim. The individual plaintiffs herein have noticed their intention to appeal from dismissal of their claims on jurisdictional grounds.

Defendants moved to dismiss for the second time on November 20, 1968, on dual grounds: (1) lack of subject-matter jurisdiction under 28 U.S.C. § 1362; and (2) failure of the complaint to state a claim upon which relief can be granted (F.R.Civ.P., Rule 12(b) (6)). Defendants argued in particular that plaintiffs' claims regarding exclusive rights of Indians under federal appropriations statutes were patently frivolous, and affidavits were submitted by defendants which, *inter alia*, set out the appropriations statutes in question.

■ Inasmuch as the difficult jurisdictional question raised by the defendants' second motion to dismiss went also to the very merits of plaintiffs' claim, this court assumed jurisdiction in order to rule on the merits. There is strong authority for such procedure where the questions of jurisdiction are inseparable from the merits of the claim. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); T. B. Harms Company v. Eliscu, 339 F.2d 823 (2nd Cir. 1964); Congress of Racial Equality v. Clemmons, 323 F.2d 54 (5th Cir. 1963).

■ Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b) (6) was then considered as a motion for summary judgment, as required by Erlich v. Glasner, 374 F.2d 681 (9th Cir. 1967), where the court has before it matters submitted which are outside the pleadings of the parties. Further hearing was continued to allow all parties reasonable opportunity to file affidavits pursuant to Rule 56, Fed.R. Civ.P.

Plaintiffs filed on January 8, 1969, their own motion for summary judgment, and all parties filed proper affidavits as to the facts pursuant to Rule 56(e). Oral argument was heard on January 31, 1969.

It is the finding of the court, based upon the stipulations and affidavits of the parties, that this case is appropriate for summary judgment since no genuine issues of material fact remain to be tried.

The material facts are undisputed. Willard Allers, a non-Indian, owns certain real property located within an area served by the Pala Indian Irrigation Project. The irrigation project is administered by the Bureau of Indian Affairs of the Department of the Interior, and serves all lands within a certain area, whether owned by non-Indians or by members of the Pala Band of Mission Indians. As shown by the map which is Exhibit "A" to the affidavit of Alex Scholder filed on January 30, 1969, Willard Allers owns lots 26, 27 and 28; lots adjacent to Allers' are owned, as allotments, by Indians, one among them being Alex Scholder. Said map reveals that Allers' land has access to a main water pipeline, which runs along Temecula Avenue, only by virtue of a narrow neck of land running east from lot 26 for some hundreds of feet to Temecula Avenue. An unpaved road lies along this neck of land which is depicted well by photographs submitted as exhibits to the affidavit of Alex Scholder filed on January 30, 1969. It is unclear whether Allers purchased the land directly from an Indian or from the Government. However, the affidavit of Josephine Jackson, a former Indian allottee of Allers' land, states that her interest was transferred to her cousin Juliana Calac in 1966, the year of purchase by Allers.

When Allers purchased the land, he paid over $1,200.00 in accumulated pro-

rata irrigation project construction charges [Letter of August 23, 1968, from Richmond F. Allan, Deputy Solicitor, Department of the Interior.] Allers requested of the Bureau of Indian Affairs that the water be supplied to his land. There was insufficient evidence submitted to determine whether Allers was promised new lines as a condition of purchase or subsequent to purchase requested new lines or possibly repair of any old lines which may have become defunct. The letter by Deputy Solicitor Allan indicates that old lines had become inoperable; cf. affidavit of Josephine Jackson. The instant controversy arises out of the Bureau's decision to construct a new lateral irrigation line from the Temecula Avenue main line to Allers' lots, the new line to run along the narrow neck of land to lot 26 as depicted by the aforementioned photographs submitted as exhibits. The estimated cost of the new line is approximately $800.00. It is undisputed that said construction, when completed, would directly benefit only Allers' land; an affidavit submitted by defendants' engineers, Norman L. Sahmaunt and William F. Cheffey, supports this finding. It is also undisputed that the funds from which the proposed construction of the lateral service pipeline would be financed were appropriated in 1965 and 1966 under the terms of Public Laws 88–356 (78 Stat. 275) and 89–52 (79 Stat. 176), which provide, *inter alia,* for the construction and repair of Indian irrigation systems. Before construction of the new line could progress beyond the initial stages, plaintiffs brought the instant action.

Plaintiffs assert that Indians, as opposed to non-Indians, must be the primary beneficiaries of funds appropriated for construction and repair of irrigation projects such as that involved here. It is contended that where some Indians' needs for irrigation water are going unmet, the expenditure of funds benefitting a non-Indian as in the present case constitutes a "taking" without due process in violation of the Fifth Amendment of the United States Constitution, a breach

of fiduciary duty owed to the Indians by the Government, and an abuse of the discretion granted to the Secretary and the Bureau regarding disbursement of monies appropriated for Indian irrigation projects. Defendants have not disputed the affidavits submitted by plaintiffs which show that some Indians have been unsuccessful in their applications to the Bureau for irrigation construction to bring water to their dry lands, particularly the affidavit by Josephine Jackson. It should be noted, however, that Jackson's affidavit refers specifically only to requests for water made in 1961 or earlier, before the funds in question here were even appropriated. It should also be noted that the main pipeline on Temecula Avenue lies along the eastern edges of the lands owned by Indians adjacent to Allers' land, whereas Allers' land has access to said mainline only by the narrow neck of land mentioned above [See map, Exhibit "A", Affidavit of Alex Scholder]. Furthermore, defendants admit that the construction costs for the lateral line on Allers' property will be assessed against all land within the irrigation system on a pro-rata basis as provided by statute. But in this connection, it should be considered that under 25 U.S.C. § 386a no such charges will be collected directly against Indian holders of allotments.

The decisive question is one of law: Whether in the circumstances of this case the Secretary of the Interior and the Bureau of Indian Affairs have authority to expend irrigation project funds for the sole, direct benefit of lands which are located within an irrigation project and which are owned by a non-Indian.

Plaintiffs bottom their "primary benefits" theory upon the statutory language found in 25 U.S.C. §§ 381–390 and upon the congressional intent in enacting P. L. 88–356 (78 Stat. 275) and P. L. 89–52 (79 Stat. 176), the statutes by which the funds to be expended for the pipeline to Allers' land were appropriated.

Although the sad history and plight of Indians in this country justifiably arouses sympathy, it is this court's duty

to apply sound legal concepts and precedent to the resolution of the question presented herein. It must be concluded that the law does not bear out plaintiffs' claims.

The plaintiffs have not been able to present clear evidence of congressional intent behind the appropriations statutes for 1965 and 1966, P. L. 88–356 (78 Stat. 275) and P. L. 89–52 (79 Stat. 176), to support their claims. The pertinent language of the statutes is entirely too broad, specifying only that the monies are to be used " * * * for construction, major repair, and improvement of irrigation and power systems * * *." P. L. 88–356; P. L. 89–52. Furthermore, the legislative history excerpted from congressional hearings and reports by plaintiffs appears ambiguous. The language cited by plaintiffs, insofar as it does apply to the appropriations statutes in question, is not at all inconsistent with an intent of Congress to provide indirect benefits to Indians through encouragement of regional land development which includes non-Indian-owned land within Indian irrigation projects.

Such an intent is reinforced by the language of 25 U.S.C. § 389, which includes the following:

"The Secretary of the Interior is authorized and directed to cause an investigation to be made to determine whether the *owners of non-Indian lands under Indian irrigation projects* * * * are unable to pay irrigation charges * * *. Where the Secretary finds that said landowners are unable to make payment due to the existence of such causes, he may adjust, defer, or cancel such charges, in whole or in part, as the facts and conditions warrant."

25 U.S.C. § 389 (emphasis supplied). Thus, Congress clearly contemplated ownership of irrigated land by non-Indians within an Indian irrigation project. Furthermore, section 389 provides for benefits to such non-Indian owners, viz., cancellation of pro-rata charges for irrigation system construction in some circumstances. [See 25 U.S.C. Supp. (1968), pp. 38–39 for recent laws implementing § 389.] The benefits to non-Indian owners under § 389 are somewhat analogous to the benefits to Indians under § 386a, which provides that no pro-rata construction charges will be assessed so long as the land remains in Indian hands.

The intent to benefit non-Indians expressed in § 389 is nowhere inconsistent with the total statutory scheme of 25 U.S.C., Chapter 11. If congressional intent were to the contrary as plaintiffs contend, it would have been a simple matter for Congress to clearly express it by statute, either in Title 25, U.S.C., or as a condition inserted in the appropriations statutes. The failure of Congress to do so is especially significant in light of the long history of substantial and numerous expenditures which have benefited non-Indian-owned lands within the Indian irrigation projects across the nation. See the chart provided by William Finale, Area Director, Sacramento Area Office, Bureau of Indian Affairs, in the Answers to Interrogatories filed January 24, 1969, Page 2. It should also be noted that Congress has enacted a general statutory plan for alienation of Indian allotments in Title 25, U.S.C., §§ 348, 349, 392, 404, 483 and 483a (in particular, § 349).

 Section 381, Title 25, U.S.C., grants discretion to the Secretary of the Interior to administer funds appropriated by Congress. Past practice and the language of § 389 has revealed that Congress did not intend the Secretary to be restricted as plaintiffs argue here. Rather, for the reasons stated above, it appears that the better view is that the Secretary and the Bureau have statutory authority to expend funds for the benefit of lands located within Indian irrigation projects without regard to whether the lands are owned by Indians or non-Indians. Thus, the proposed expenditure does not constitute an unconstitutional "taking" in violation of the Fifth

Amendment, a breach of duty, or an abuse of discretion.

To grant plaintiffs' motion for summary judgment would be to ignore the statutory plan for irrigation of Indian lands, 25 U.S.C., Chapter 11 (§§ 381–390) and in particular § 381, which grants discretion to the Secretary, and § 389, which provides for specific benefits to non-Indians, to ignore the general statutory scheme for allotment and alienation of Indian lands, and to ignore the unrestrictive language of the appropriations statutes in question.

Even if plaintiffs' basic "primary benefits" theory, contrary to this court's decision here, were properly substantiated, it does not necessarily follow that the construction project for the benefit of Allers' land in this case would be inconsistent with it. Viewed in the total context of the properties' locations and the money expended for the pipeline, the following facts are particularly significant: (1) The purchase price Allers paid for the land in question included over $1,200.00 in accrued irrigation costs [U.S. Attorney's affidavit, filed September 20, 1968, pg. 2], yet the estimated cost of bringing water to Allers' land by the construction challenged here is approximately $800.00 out of total appropriations of $40,000.00 from the 1965–1966 appropriations statutes aforementioned; and (2) the location of Allers' land is such that he has considerably less access to the main water pipeline running down Temecula Avenue than do the Indians owning adjacent lands. Under these circumstances, it does not appear that Allers is being singled out for unduly favorable treatment. The excess of accrued irrigation charges over and above the cost of the pipeline to Allers' land is probably a net gain for the irrigation project as a whole, and thus indirectly is a net benefit to Indian owners of lands served by the project.

Thus, for the reasons stated above, the plaintiffs' motion should be denied, the preliminary injunction should be dissolved, and the defendants' motion for summary judgment should be granted.

Separate judgment shall be filed. This opinion and memorandum of decision shall serve as findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.